UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
──────────────────────────────────X

JACQUELINE ANITA SMITH
*o/b/o HOYT SMITH (deceased)*,

              Plaintiff,

-against-                                                                 MEMORANDUM & ORDER

JO ANNE B. BARNHART                                       05-CV-4253 (NGG) (SG)
COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
──────────────────────────────────X

GARAUFIS, United States District Judge:

Jacqueline Anita Smith ("Plaintiff") brings this action on behalf of her deceased husband, Hoyt Smith ("Smith"),[1] pursuant to 42 U.S.C. § 405(g) to challenge a determination of Jo Anne B. Barnhart, Commissioner of Social Security ("Commissioner" or "Defendant"), denying review of Administrative Law Judge ("ALJ") Sol A. Wieselthier's determination that Plaintiff is not entitled to Disability Insurance Benefits ("DIB") under the Social Security Act.

Before the court is Defendant's motion for judgment on the pleadings. For the reasons stated below, Defendant's motion is GRANTED.

I.    **BACKGROUND**

    A.    **Procedural History**

Smith filed a claim for DIB on July 10, 2001, alleging that he became disabled on December 1, 1990.[2] (Transcript of Record ("Tr.") at 44-46, 47.) On October 19, 2001, Smith's

---

[1] If an individual dies and is entitled to underpayments (i.e., claimant is found to be eligible for DIB), such underpayments will be paid to the individual's surviving spouse. 20 C.F.R. § 404.503(b)(i).

[2] Smith initially stated the date of the disability as December 1, 1991 (Tr. at 44), but, on July 12, 2001, he amended the application to read December 1, 1990. (Id. at 47.)

request was denied (id. at 33-36), and he filed a timely request for an administrative hearing (id. at 41). The hearing was held before ALJ Wieselthier on February 11, 2003[3] (id. at 223-68) and, in a decision dated June 21, 2004, the ALJ denied Smith's claim (id. at 26-31). On July 8, 2005, the Appeals Council denied Smith's request for review (id. at 4-6), and Smith timely commenced this action.

### B. Factual Background

#### 1. Personal and Medical Histories

Smith was born on March 1, 1953 in Mullins, South Carolina. (Id. at 229.) He obtained an eleventh-grade education before dropping out of school. (Id. at 234.) He received some training in woodworking and painting, but during his life he used only his painting skills. (Id. at 235.) Smith's previous relevant work consisted of six months at a maintenance company in 1991 and five years as a landscaper from 1980 to 1985.[4] (Id. at 238.)

Smith had a history of alcohol abuse, which consisted of "three or four shots . . . of rum" daily. (Id. at 161, 239.) Smith testified that he stopped drinking after being hospitalized in 1994 when his "ulcer bust[ed]." (Id. at 240.) He also testified to using cocaine on one occasion, the night he was hospitalized. (Id. at 241.)

Smith claimed he could not work due to gastric cancer, peptic ulcer, high blood pressure, and anemia. (Id. at 50.) Smith testified that prior to June 1994, his lower right ankle would swell after a two-to-three-mile walk, and he would treat it by soaking his foot in Epsom salt. (Id.

---

[3] Smith originally appeared for a hearing on December 11, 2002, but the hearing was adjourned in order to allow Smith the opportunity to obtain counsel.

[4] In a separate notice to the Social Security Administration, Smith claims to have worked as a landscaper from 1981 to 1990. (Id. at 78.)

at 251.) Furthermore, after standing for approximately one hour, his right knee would get numb. (Id. at 252.) Smith claimed he told his doctor about this, and the doctor said it was "probably arthritis." (Id.) Smith had no problem grasping or holding objects with either of his hands and also had no problem sitting. (Id.) Sometimes, his right knee would stiffen, but he had no problems bending down. (Id. at 253.) Smith also estimated that he was able to lift one hundred pounds. (Id.) After being hospitalized for four days in 1991, as discussed below, Smith could walk for only thirty minutes before becoming tired. (Id.)

Smith testified that prior to June 1994, his typical day involved readying his children for school, watching television, cooking, cleaning, and sleeping. (Id. at 254-55.) Cramps and pain in Smith's stomach made it difficult for him to sleep at night, so he would walk around the house to ease the pain. (Id. at 256-57.) He visited his sister once a week and went to church twice a month. (Id. at 260.)

On March 12, 1994, after a night of abusing alcohol and drugs, Smith was admitted to LaGuardia Hospital experiencing pain in his abdomen, nausea and vomiting. (Id. at 160.) The preliminary diagnosis was upper gastrointestinal ("GI") bleeding. (Id.) An upper GI endoscopy showed a benign antral ulcer. (Id. at 161.) "The biopsy of the ulcer came back and showed markedly inflamed gastric mucosa and H-pylori was not noted." (Id.) After twenty-four hours in the hospital, Smith had no more complaints. (Id.) Smith was discharged on March 16, 1994 and prescribed Zantrac, Thiamine, and Iron Sulfate. (Id.)

Smith visited Dr. Jung-Ja Seo ("Seo") for a follow-up appointment on March 24, 1994. (Id. at 150.) Seo diagnosed Smith with peptic ulcer disease and observed bleeding even though Smith complained of no pain. (Id.) Seo recommended that Smith continue all medication that

3

was prescribed. (Id.)

Laboratory results from a routine hematology conducted on March 22, 1994 showed low blood count, low hemoglobin, low hematocrit, high red-cell distribution width, high platelet count, and low levels of eosinophils. (Id. at 197.) A routine hematology conducted on June 16, 1994 showed the same, except that Plaintiff's eosinophils had reverted back to normal. (Id. at 194.) However, there were new showings of low white-blood counts and low lipase. (Id. at 194-95.) The results showed the presence of H. Pylori antibodies; however, "the height of the antibody response is not correlated with the presence or absence of symptoms, nor does it differentiate between active or past infection." (Id. at 195.)

On June 16, 1994, Smith was seen by Dr. Donald Nicolandi ("Nicolandi"). (Id. at 190.) Nicolandi noted that Smith's status was post gastric antral ulcer. (Id.) He also ruled out H. Pylori. (Id.)

On June 17, 1994, Smith underwent an upper GI endoscopy. (Id. at 191.) The results revealed a normal esophagus and duodenum, as well as mild gastritis. (Id.) Smith was recommended to discontinue alcohol use, and the final diagnosis was gastritis and a healed ulcer. (Id.) For reasons stated below, medical records dated after June 30, 1994 are not pertinent for consideration.

Smith died on May 20, 2003. (Id. at 208.) Plaintiff filed the instant Complaint on his behalf on September 8, 2005. (Docket Entry #1.)

## II. DISCUSSION

### A. Standard of Review

A district court may review the Commissioner's denial of social security benefits "only if

4

the factual findings are not supported by substantial evidence, or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000); see also Beckles v. Barnhart, 340 F. Supp. 2d 285, 287 (E.D.N.Y. 2004) (in determining whether the Commissioner erred in a denial of social security benefits, a district court judge may consider only whether there is "substantial evidence" in the record to support the Commissioner's decision) (citing 42 U.S.C. § 405(g)). In this context, "substantial evidence" has been defined by the Supreme Court as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

## B. Date Last Insured

"A period of disability is a continuous period of time during which you are disabled." 20 C.F.R. § 404.320(a). This "period of disability" can commence only if the claimant is "fully insured." 42 U.S.C. § 416(i)(2)(c). The ALJ found, and both parties seem to agree, that Smith lost his "fully insured" status on June 30, 1994. (Tr. 30, 32A.) Thus, Smith's "date last insured" is June 30, 1994, and despite any illnesses that may have taken effect afterwards, he is entitled to benefits stemming only from illnesses before the date last insured. See Arnone v. Bowen, 882 F.2d 34, 38 (2d Cir. 1989) ("regardless of the seriousness of his present disability, unless [plaintiff] became disabled before [date last insured], he cannot be entitled to benefits").

## C. Analysis

In the context of social security, the term "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

5

The ALJ must perform a five-step sequential analysis to properly determine whether the claimant is "disabled." 20 C.F.R. § 404.1520(a)(4); see Sutherland v. Barnhart, 322 F. Supp. 2d 282, 287 (E.D.N.Y. 2004) (Garaufis, J.). First, the ALJ must determine if the claimant is currently engaging in substantial gainful work activities; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). Second, if the claimant is not engaging in substantial work, the ALJ must ascertain whether the claimant has a severe impairment; if not, then the claimant is not disabled. Id. § 404.1520(a)(4)(ii). Third, if such an impairment does exist, the ALJ must determine if the impairment meets or equals the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Listing"); if so, then the claimant is considered disabled. Id. § 404.1520(a)(4)(iii). Fourth, if the impairment does not meet the criteria of the Listing, then the ALJ must assess the claimant's residual functional capacity ("RFC") and whether the impairment would prevent the claimant from engaging in his past work. Id. § 404.1520(a)(4)(iv). Finally, if the impairment does prevent the claimant from engaging in previous work activities, the ALJ must consider the claimant's RFC, age, education, and work experience to see if the impairment would prevent the claimant from engaging in any other work. Id. § 404.1520(a)(4)(v). If the claimant is prevented from doing other work, then the ALJ must find the claimant disabled. Beckles, 340 F. Supp. 2d at 288 (citing Shaw, 221 F.3d at 132).

In the instant case, the ALJ acknowledged and performed the five-step analysis. (Tr. at 27-28.) Considering the first step, whether the claimant is currently engaging in substantial gainful work activities, the ALJ determined that the minimal work Smith performed after the date last insured was "unsuccessful" and that Smith was not performing any substantial gainful work. (Id. at 27.) Considering the second and third steps, whether the claimant has a severe

6

impairment and whether that impairment meets the criteria of the Listing, the ALJ found that the medical evidence indicated that Smith was suffering from a peptic ulcer, which would be categorized as "severe" but not severe enough to meet the requirements of the Listings. (Id. at 28.) Considering the fourth step, whether the impairment prevents the claimant from engaging in his past work, the ALJ determined that Smith retained the RFC to "stand/walk/sit up to six hours in an eight-hour workday, frequently lift up to ten pounds and occasionally up to twenty pounds." (Id.) This RFC would prevent Smith from performing any past relevant work. (Id.) Finally, considering the fifth step, whether the claimant can engage in any other work, the ALJ found Smith could perform all the demands of "light work" as it is defined in the Medical-Vocational Guidelines and thus that Smith was not disabled. (Id. at 29-30.)

Plaintiff did not file an opposition to the Commissioner's motion for judgment on the pleadings. In addition, Plaintiff's Complaint does not identify Plaintiff's basis for objecting to the ALJ's decision. The court therefore lacks the benefit of knowing where Plaintiff believes the ALJ erred in concluding that Smith was not disabled. However, on December 28, 2004, counsel for Plaintiff submitted a letter to the Appeals Council alleging that the ALJ committed four errors. (Id. at 209-10.) The court will address those four issues in order.

Plaintiff's first claim is that "[t]he ALJ erred in not considering the pain and distress of Mr. Smith's cardiac condition." (Id. at 210.) Plaintiff asserts that hospital records indicate an electrocardiogram ("EKG") test revealed sinus tachycardia and non-specific STT wave changes, which led to Smith's chest pain. (Id. at 209, 160.) However, it is clear that despite these findings, upon being admitted to the hospital, Smith felt no chest pain or any shortness of breath. (Id. at 185). Moreover, twenty-four hours after Smith was admitted, he "had no complaints and

7

was comfortable," (id. at 184) and at a follow-up visit eight days later, Smith continued to assert he had no complaints (id. at 167). Therefore, there is "substantial evidence" to support the conclusion that the ALJ did not err in not considering the alleged pain and distress stemming from Smith's cardiac condition.

Plaintiff next questions the ALJ's finding that Smith could perform a full range of light work. (Id. at 210.) Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

20 C.F.R. § 404.1567(b). Smith did testify that his right knee would get numb after standing for an hour and that his doctor said it was probably arthritis. (Tr. at 252.) However, this is not found in any doctor's note contained in the record. Furthermore, his testimony indicates he could certainly meet the requirements for light work. He stated he could walk two to three miles before feeling pain, could lift "[a]bout 100 pounds," and had no problems sitting. (Tr. at 253.) Smith's testimony, coupled with the lack of any medical evidence to the contrary, indicates that the ALJ had significant evidence to rely upon in finding that Smith could perform light work.

Plaintiff's third claim is that "[t]he ALJ erred in not calling a vocational expert to testify as to work a person with Mr. Smith's impairments could do." (Id. at 210.) The requirement of a vocational expert manifests at the final step of the five-step process, when the burden shifts to the Commissioner to prove that Smith was not disabled and could perform work found in the national market. See Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) ("If the claimant satisfies her burden of proving the requirements in the fist four steps, the burden then shifts to the Secretary

8

to prove in the fifth step that the claimant is capable of working"). The Commissioner can meet this burden by "resorting to the applicable medical vocational guidelines ("the Grids"), [located at] 20 C.F.R. Pt. 404, Subpt. P, App. 2." Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir. 1986). If the claimant suffers *only* from exertional limitations, then the Commissioner can use the appropriate Grids to make her determination; however, where "significant nonexertional impairments are present," the use of the grids is not permitted; rather, the Commissioner needs to call a vocational expert to testify that there are jobs in the market that the claimant can perform. Rosa v. Callahan, 168 F.3d 72, 82 (2d Cir. 1999). Exertional limitations are "limitations and restrictions imposed by . . . impairment(s) and related symptoms, such as pain, [that] affect only [the] ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 416.969a(b). Non-exertional limitations are "limitations and restrictions imposed by . . . impairment(s) and related symptoms, such as pain, [that] affect only [the] ability to meet the demands of jobs other than the strength demands." Id. § 416.969a(c)(1).

In the present case, the ALJ used Rule 202.17 of the Grids to determine that Smith was not disabled. (Tr. at 31.) That rule states a "younger individual"[5] whose educational level would render him "[a]t least literate and able to communicate in English" and whose past work experience is classified as "[u]nskilled or none" requires a finding of "not disabled." As stated above, the use of this grid is appropriate so long as the claimant has only exertional limitations. Given the above definition, limitations imposed by a peptic ulcer are exertional limitations, and therefore the ALJ was correct in applying the Grids. Furthermore, even if the ulcer were a non-

---

[5] A "younger individual" is someone between the ages of 18 and 44. 20 C.F.R. § 404.1563.

9

exertional limitation, it would not change this analysis. Only when the non-exertional limitations are "significant" would they make the grids inapplicable. "By the use of the phrase 'significantly diminish' we mean the additional loss of capacity . . . that so narrows a claimant's possible range of work as to deprive him of meaningful employment opportunity." Bapp, 802 F.2d at 606. Nothing in the record would indicate any non-exertional limitations, let alone "significant" ones. Therefore, the use of a vocational expert was not necessary.

Plaintiff's fourth claim is that, "[t]here is no support in the record for finding Mr. Smith not fully credible." (Tr. at 210.) Specifically, the ALJ found Smith's allegations of limitations not to be credible. (Id. at 30.) Smith testified that, prior to 1994, he suffered from heartburn, chest pain, gas, and numbness in his knee. (Id. at 245.) Smith must demonstrate by medical signs or findings that he has a condition that could reasonably be expected to produce the alleged symptoms. See 20 C.F.R. § 404.1529(a)-(b)). The record, however, does not contain any medical evidence relating to these complaints of pain, gas and numbness. Further, aside from one hospital stay in 1994 to treat his peptic ulcer, Smith did not have any GI complaints until January 1996. (Id. at 152.) Although subjective pain can be the basis for establishing a disability even in the absence of objective medical evidence, an impairment must first be medically ascertained. See Gallagher v. Schweiker, 697 F.2d 82, 84 (2d Cir. 1983). Once the claimant proves a physical impairment, then pain caused by that impairment can be considered disabling. Id. In the present case, even if Smith claimed his pain and numbness was totally debilitating, without any medical evidence establishing an impairment, his testimony would not be credible. "If the [Commissioner's] findings are supported by substantial evidence, the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Heath

v. Barnhart, No. 04-CV-2926, 2005 WL 1691044, at *4 (E.D.N.Y. July 20, 2005) (quoting Aponte v. Sec'r, Dep't of Health and Human Servs., 728 F.2d 588, 591 (2d Cir. 1984)). The Commissioner's determination is based on "substantial evidence" in the record and therefore was not in error.

One final credibility issue is worth noting. Social Security Ruling ("SSR") 96-7p states:

> The determination or decision [of the ALJ] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

In the current case, the ALJ's credibility determination was conclusory. However, since Plaintiff has not pointed out any specific testimony at the administrative hearing that, if taken as credible, would substantially contradict the medical record or mandate a finding of disability, the error is harmless and remand is not warranted. See Frank v. Barnhart, 326 F.3d 618, 622 (5th Cir. 2003) (holding that the ALJ's credibility determination was harmless since the ALJ's determination that claimant was disabled was based on overwhelming medical evidence); Schumacher v. Barnhart, 196 F. Supp. 2d 716, 728 (N.D. Ill. 2002) (holding that the ALJ's finding on credibility did not require remand because "the medical evidence fully supports the ALJ's conclusion that Claimant was not disabled").

In the instant case, the ALJ relied upon the lack of medical evidence to determine Smith was not credible with his allegations of limitations. Even if the ALJ found every allegation made by Smith to be true, the ultimate conclusion that Smith was not disabled would be the same

because Smith specifically testified that despite the pain, he could perform light work. The ALJ's decision not to give reasons for his credibility determination was immaterial to the final outcome.

III. CONCLUSION

For the reasons set forth above, Defendant's motion for judgment on the pleadings is GRANTED. The Clerk of Court is directed to close this case and to mail a copy of this Memorandum and Order to the *pro se* Plaintiff.

Dated: July 13, 2007
Brooklyn, N.Y.

NICHOLAS G. GARAUFIS
United States District Judge